
IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2016

## STATE OF TENNESSEE EX REL. JAMIE JOY WILLIAMS v. DEADRICK DONNELL WOODS, SR.[1]

**Appeal from the Juvenile Court for Shelby County**
**No. H2317      David S. Walker, Special Judge**

_____

**No. W2016-00935-COA-R3-JV**
_____

This is a child support action involving one child, who was born in 1995 and had reached the age of majority by the time of trial. Upon the father's voluntary acknowledgment of paternity, the trial court entered an order of legitimation in April 1996. The State of Tennessee ("the State"), acting on behalf of the mother, filed a petition to modify a child support order in April 2002. The father filed a motion to dismiss, and the State subsequently withdrew the petition because no prior child support order had been established. The mother then filed a petition for child support in September 2014. Following a bench trial before a special judge, the trial court established the father's retroactive child support obligation in the amount of $79,647.00, giving credit to the father for $59,229.00 he previously had paid toward the child's support and expenses. The court incorporated three income shares worksheets representing three different time periods during the child's minority. The father has appealed, asserting, *inter alia*, that the trial court erred by finding that the child had resided with the mother for 285 days per year during the time period of January 1, 2010, through May 31, 2014, because the child resided with the mother's stepfather on weekdays while attending high school. To correct an apparent mathematical error in the judgment, we modify the number of months for which the first income shares worksheet is to be applied from eighty-one to ninety-two and the number of months for which the third income shares worksheet is to be applied from sixty-four to fifty-three, resulting in a total reduction in the father's retroactive child support obligation from $79,647.00 to $74,818.00. We affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed as Modified; Case Remanded**

---

[1] The respondent father's surname is spelled "Wood" rather than "Woods" in a few places in the record. Because the trial court's final judgment and the father's pleadings and financial paperwork list his last name as "Woods," we have adopted that spelling in the style of this action and throughout this Opinion.

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

James Franklin, Jr., Memphis, Tennessee, for the appellant, Deadrick Donnell Woods, Sr.

Herbert H. Slatery, III, Attorney General and Reporter, and Brian A. Pierce, Assistant Attorney General, for the appellee, State of Tennessee *ex rel.* Jamie Joy Williams.

**OPINION**

I.  Factual and Procedural Background

The petitioner, Jamie Joy Williams ("Mother"), and the respondent, Deadrick Donnell Woods, Sr. ("Father"), have one child together, a son ("the Child"). At the time of the Child's birth in October 1995, Mother and Father resided together with the Child and continued to do so for approximately six months before separating. On April 4, 1996, the Shelby County Juvenile Court ("trial court") entered an order of legitimation as to the Child upon Father's filing a voluntary acknowledgment of paternity. No further proceedings took place in the trial court at that time, and the court did not enter an order regarding child support.

It is undisputed that following the parents' separation, the Child resided the majority of the time with Mother until his high school years. Mother also had one other child, and she and both children resided together with the maternal grandmother ("Maternal Grandmother") and a maternal aunt ("Maternal Aunt"). Prior to 2010, Father enjoyed co-parenting time with the Child on at least a semi-regular basis and was active as an assistant coach of the Child's football team through the Child's middle school years. Testimony demonstrated that Father was married in June 1997, and that his wife ("Stepmother") assisted him in caring for the Child when the Child stayed in Father's home.

During trial in the instant action, Mother testified that in 2002 she sought assistance from the State to obtain support for the Child. The State has provided child support enforcement services to Mother pursuant to Title IV-D of the Social Security Act, 42 U.S.C. § 651 *et seq.* On April 19, 2002, the State filed a "Petition to Modify Order," averring a signficant change in circumstances since the April 1996 order and requesting that the trial court "modify" its prior order to set child support in accordance with the Tennessee Child Support Guidelines. After more than eleven years had passed without the State's taking any additional action, Father filed a motion to dismiss the petition on October 21, 2013. Father requested that the petition be denied pursuant to Tennessee

Rule of Civil Procedure 4.01 for failure to serve summons and Tennessee Rule of Civil Procedure 41.02(1) for failure to prosecute.

Following a hearing conducted on July 7, 2014, the trial court magistrate, Joseph G. Little, recommended, *inter alia*, that the State's petition be dismissed without prejudice upon the State's request. The trial court judge signed the order the same day, adopting, ratifying, and confirming the magistrate's recommendations.[2] This order was subsequently entered on July 25, 2014. On September 12, 2014, Mother, through her counsel, filed a "Petition for Child Support," requesting that the trial court set Father's child support obligation, including retroactive child support, and order him to pay support through the Tennessee Central Child Support Receipting Unit.

Testimony at trial demonstrated that the Child had graduated from high school at the end of the 2013-14 academic year. When the Child entered high school in August 2010, he began to reside with Mother's stepfather ("Step-Grandfather") during the school week. Mother previously had been diagnosed with multiple sclerosis. Although Mother continued to work in her position as a dispatcher with the City of Memphis, she often experienced periods when she needed assistance with some daily living skills. Maternal Grandmother testified that during this time, Maternal Grandmother stopped working outside the home in order to provide care for Mother. It is undisputed that the parents and Step-Grandfather agreed that while the Child attended high school, he should reside with Step-Grandfather on the weekdays, in part because of Mother's condition and in part because the parties believed that the high school for which Step-Grandfather's home was zoned was the best choice for the Child. Step-Grandfather testified that on weekends and during summer vacations, he returned the Child to Mother's home. Although testimony differed regarding the exact amount of time the Child spent with Father during the high school years, it is undisputed that Father continued to be involved in the Child's life and that the Child spent some days during weekends, holidays, and summer vacations with Father.

On January 28, 2015, Father filed an "Affidavit of Payments Made Toward Arrears," delineating payments he had purportedly made directly to Mother and expenses he had purportedly paid on behalf of the Child for the years spanning 2003 through 2014. In total, Father requested a credit of $59,229.00 against any award to Mother of retroactive child support. Following a hearing conducted on May 13, 2015, trial court Magistrate Debra M. Sanders, *inter alia*, set Father's retroactive child support obligation in the amount of $60,626.00 for 171 months and found that the Child had reached the age of emancipation such that no current child support obligation would be set. The

---

[2] The trial court judge presiding at the time of the July 7, 2014 order was the Honorable Curtis S. Person. By the time that subsequent findings and recommendations were confirmed by the trial court in this action, the presiding judge was the Honorable Dan H. Michael.

presiding trial court judge signed the order the same day, adopting, ratifying, and confirming the magistrate's recommendations. This order was subsequently entered on May 27, 2015. Pursuant to the order, the case was continued "for final disposition and a determination of credit for necessaries."

Following a subsequent hearing regarding the amount of retroactive support with which Father should be credited, Magistrate Sanders entered findings and recommendations on July 29, 2015, establishing retroactive child support in the amount of $5,147.00 upon finding that Father was entitled to credit for having previously paid $55,479.00 toward the Child's support and necessary expenses. The magistrate directed Father to pay his retroactive child support obligation at the rate of $10.00 per month to the Central Child Support Receipting Unit. Also on July 29, 2015, the trial court judge signed the magistrate's findings and recommendations, ordering them "adopted, ratified, and confirmed as the Order of this Court." This order was subsequently entered on August 21, 2015. In the meantime, Mother had timely filed on August 5, 2015, a request for hearing before the trial court judge, pursuant to what was then Tennessee Code Annotated § 37-1-107(e) (2014) (providing in pertinent part that following a hearing before the juvenile court magistrate, any party could file within five days, excluding non-judicial days, a request for rehearing before the juvenile court judge).[3] In an order entered September 14, 2015, the trial court granted Mother's request for a hearing before the judge.

On February 23, 2016, this action came for trial before Special Judge David S. Walker. Although the resultant final judgment contains language to the effect that the trial court judge appointed Mr. Walker as a special judge, the final judgment is signed by Mr. Walker and not the trial court judge. The record on appeal contains no respective appointment order signed by the trial court judge. During trial, the court heard testimony from the parties, the Child, Step-Grandfather, Maternal Grandmother, Maternal Aunt, and Stepmother.

The trial court entered a final judgment on March 4, 2016. The court set aside the magistrate's July 29, 2015 ruling and established Father's retroactive child support obligation in the amount of $79,647.00 to be paid to Mother through the Central Child Support Receipting Unit. Father stipulated to Social Security records demonstrating his yearly income as a long-time employee with United Parcel Service. Although Father also testified regarding rental income he had received since inheriting real property from his

---

[3] Effective July 1, 2016, the General Assembly amended this subsection, now codified at Tennessee Code Annotated § 37-1-107(d) (Supp. 2016), to provide in pertinent part that following a hearing before the juvenile court magistrate, "[a]ny party may, within ten (10) days after entry of the magistrate's order, file a request with the court for a de novo hearing by the judge of the juvenile court." *See* 2016 Pub. Acts, Ch. 716 § 1 (S.B. 2572).

mother three years prior to trial, the court found that the rental income should not be imputed to Father due to the relatively short time period that Father had owned the property and the lack of evidence presented regarding expenses related to the property. On appeal, the court's findings regarding each party's respective gross monthly income are not in dispute. The court calculated 217 months of retroactive child support through May 31, 2014, at a total amount of $138,876.00, with $59,229.00 credited to Father for support and necessary expenses he previously had paid on behalf of the Child. The State does not dispute the $59,229.00 credit to Father.

The trial court attached to its judgment three income shares worksheets, respectively reflecting the changing incomes and circumstances of the parties. The court directed that the first worksheet would be used for 81 months from the approximate date the parties separated in 1996 through December 31, 2003 ("Time Period I"), assessing Father with a child support obligation of $404.00 per month for a total retroactive obligation of $32,724.00; the second worksheet would be used for 72 months from January 1, 2004, through December 31, 2009 ("Time Period II"), assessing Father with a child support obligation of $725.00 per month for a total retroactive support obligation of $52,200.00; and the third worksheet would be used for 64 months from January 1, 2010, through May 31, 2014 ("Time Period III"), assessing Father with a child support obligation of $843.00 per month for a total child support obligation of $53,952.00.[4] The court also found that Mother was the primary residential parent ("PRP") and that overall, the Child had resided a presumptive 285 days per year with Mother and 80 days per year with Father throughout the Child's minority. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(7)(a). Particularly as to the time period spanning January 2010 through May 2014, the court found that Mother was entitled to child support because, although the Child resided with Step-Grandfather on weekdays during the school year, the Child was still under the care and control of Mother or Mother's family for 285 days per year.

Father timely appealed. Upon receipt of the record, this Court entered an order directing the parties to address in their respective briefs "whether the special judge was validly appointed to hear this matter and if not, then address the effect on the validity and finality of the judgment appealed." Father and the State each posited in their respective appellate briefs that Mr. Walker had lawful authority to preside over the trial.[5]

---

[4] Although not raised as an issue on appeal by either party, we note that the final judgment contains an apparent miscalculation as to the number of months in the first and third time periods identified by the court. The time period from the parties' approximate separation in late April 1996 through December 31, 2003, totals 92 months (rather than 81), and the time period from January 1, 2010, through May 31, 2014, totals 53 months (rather than 64). We will address this miscalculation more fully in a subsequent section of this Opinion.

[5] Mother did not file a brief on appeal.

## II. Issues Presented

Father presents four issues on appeal, which we have restated as follows:

1. Whether the trial court erred by allowing Mr. Walker to hear this action as a special judge without an order of appointment signed by the trial court judge.

2. Whether the trial court erred by finding that Mother was entitled to collect retroactive child support for Time Period III, spanning January 1, 2010, through May 31, 2014.

3. Whether the trial court erred by finding that the Child had resided with Mother 285 days per year during Time Period III.

4. Whether the trial court erred by declining to find that the Child had resided with Father for more than the presumptive average of 80 days per year.

## III. Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

Determinations regarding child support are reviewed under an abuse of discretion standard. *See Mayfield v. Mayfield*, 395 S.W.3d 108, 114-15 (Tenn. 2012); *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). As this Court has explained:

> Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support.

*Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

* * *

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Richardson*, 189 S.W.3d at 725.

Regarding adherence to the Child Support Guidelines, this Court has explained:

> In Tennessee, awards of child support are governed by the Child Support Guidelines ("the Guidelines") promulgated by the Tennessee Department of Human Services Child Support Services Division. Tenn. Code Ann. § 365-101(e)(2). Tennessee's Child Support Guidelines have the force of law. *Jahn v. Jahn,* 932 S.W.2d 939, 943 (Tenn. Ct. App. 1996). Statutes and regulations pertaining to child support are intended to "assure that children receive support reasonably consistent with their parent or parents' financial resources." *State ex rel. Vaughn v. Kaatrude,* 21 S.W.3d 244, 248-49 (Tenn. Ct. App. 2000); *see also* Tenn. Comp. R. & Regs. 1240-02-04.01(3)(e). Courts are therefore required to use the child support guidelines "to promote both efficient child support proceedings and dependable, consistent child support awards." *Kaatrude,* 21 S.W.3d at 249; *see also* Tenn. Code Ann. § 36-5-101(e); Tenn. Comp. R. & Regs. 1240-02-04-.01(3)(b), (c).

*Sykes v. Sykes,* No. M2012-01146-COA-R3-CV, 2013 WL 4714369, at *2 (Tenn. Ct. App. Aug. 28, 2013) (footnote omitted).

## IV. Authority of Special Judge

As a threshold issue, we first address whether the special judge was properly appointed to hear this matter. *See* Tenn. R. App. P. 13(b); *see, e.g., Cnty. of Shelby v. City of Memphis*, 365 S.W.2d 291, 291 (Tenn. 1963). If Mr. Walker was not properly appointed as a special judge, we must then determine whether the finality and validity of the trial court's judgment are affected. In his principal brief on appeal, Father has indicated his acquiescence in the appointment of Mr. Walker as a special judge and agreed that Mr. Walker maintained the authority to render a decision as special judge in this cause. Upon our careful review, we conclude that Mr. Walker acted as a *de facto* judge in these proceedings and that the judgment signed by Mr. Walker is valid and enforceable.

The trial court's judgment, signed by Mr. Walker, includes apparent boilerplate language,[6] which reads:

> The Judge finds it necessary to be absent from holding Court, and pursuant to T.C.A. 17-2-122(b) appoints as substitute judge, David S.

---

[6] The same language, except for a different special judge's name, appears in the record in two separate orders granting continuances in this matter.

Walker who is a licensed attorney in good standing with the Tennessee Supreme Court and a Magistrate appointed by him to serve as special judge in matters related to duties as a judicial officer.[7]

The record before us contains no order signed by the trial court judge appointing Mr. Walker as a special judge in this action.[8]  Instead, the judgment bears only Mr. Walker's signature for appointment as special judge.  Notwithstanding, neither party has challenged the special judge's authority to adjudicate this action either at the trial court level or on appeal.

Although the absence of an appointment order is a procedural error, the procedural error is not necessarily fatal.  *See Ferrell v. Cigna Prop. & Cas. Ins. Co.*, 33 S.W.3d 731, 739 (Tenn. 2000); *State Dep't of Children's Servs. v. A.M.H.*, 198 S.W.3d 757, 764 (Tenn. Ct. App. 2006), *perm. app. denied* (Tenn. June 8, 2006); *In re M.A.P.*, No. W2008-01352-COA-R3-PT, 2009 WL 2003357, at *13, n.11 (Tenn. Ct. App. July 10, 2009).  If a judge is acting under the color of law absent bad faith, the special judge may serve as a *de facto* judge, and his or her acts will be binding on the parties.  *See Ferrell*, 33 S.W.3d at 739; *In re. M.A.P.*, 2009 WL 2003357, at *13, n.11.  In *Ferrell*, our Supreme Court explained that "'[a] judge *de facto* is one acting with color of right and who is regarded as, and has the reputation of, exercising the judicial function he assumes.'"  *Ferrell*, 33 S.W.3d at 739 (quoting *State ex rel. Newsom v. Biggars*, 911 S.W.2d 715,718 (Tenn. 1995)).

---

[7] Tennessee Code Annotated § 17-2-122 (2009) provides:

> (a) Notwithstanding § 16-15-209 or § 17-2-109 or any other relevant provision to the contrary, a judge shall have the authority to appoint a special judge as provided in this section.

> (b) Sections 16-15-209 and 17-2-109 and any other relevant provision shall not apply where a judge finds it necessary to be absent from holding court and appoints as a substitute judge an officer of the judicial system under the judge's supervision whose duty it is to perform judicial functions, such as a juvenile magistrate, a child support magistrate or clerk and master, who is a licensed attorney in good standing with the Tennessee supreme court. The judicial officer shall only serve as special judge in matters related to their duties as judicial officer.

[8] Although the record is otherwise silent as to whether Mr. Walker is a magistrate or other judicial officer, as noted by the State, Mr. Walker is listed as a juvenile magistrate on the website maintained by the Tennessee Administrative Office of the Courts, located at http://www.tncourts.gov.  We take judicial notice of this listing.  *See* Tenn. R. Evid. 201(b)(2).  However, because the record contains no order signed by the trial court judge appointing Mr. Walker as a special judge, Mr. Walker's status as a magistrate does not affect our analysis in the instant action.

During the pendency of this appeal, this Court *sua sponte* directed the parties to address in their briefs whether the special judge was properly appointed to hear this matter and if not, whether the judgment was valid and final. Father and the State each respectively concluded that the special judge had the authority to preside over the case as a *de facto* judge.

This Court recently addressed a similar issue in *In re Devin B.*, No. W2016-00121-COA-R3-JV, 2016 WL 4520859, at *3 (Tenn. Ct. App. Aug. 25, 2016), *perm. app. denied* (Tenn. Dec. 15, 2016), explaining in relevant part:

> Relying on *In re M.A.P.*, Father notes that the special judge's "authority was not challenged by any of the parties, and there is nothing in the record indicating that [the special judge] operated in bad faith, and therefore, [the special judge] acted as de facto judge, and the appeal is properly before this [c]ourt." Despite this Court's criticism of the Juvenile Court's method of appointing special judges in 2009 in *In re M.A.P.*, the practice appears to have endured. However, given Father's acquiescence to the practice and the outcome discussed herein, we proceed to address the issues raised by Appellant on appeal.

*See also In re Scott H.*, No. W2016-00070-COA-R3-PT, 2016 WL 5667511, at *5-7 (Tenn. Ct. App. Sept. 30, 2016).

Similarly, in the case at bar, Father has acquiesced in the appointment and asserted on appeal that Mr. Walker had the authority to preside as special judge. Despite the absence of an appointment order signed by the trial court judge, there is no evidence contained in the record that the special judge operated in bad faith. Inasmuch as there has been no objection by any party to Mr. Walker's authority to preside over this matter in the absence of a valid appointment order, we determine that the special judge was acting as a *de facto* judge. Accordingly, the judgment is final and valid. We shall proceed to address the issues raised on appeal.

V. 2010-2014 Retroactive Child Support Award

Father contends that the trial court erred by finding that Mother was entitled to an award of retroactive child support for Time Period III when the Child attended high school and undisputedly resided with Step-Grandfather on weekdays during the academic year. Father does not dispute that child support "is owed" for Time Period III. Instead, Father argues that Step-Grandfather, rather than Mother, is entitled to an award of retroactive child support for this time period. The State asserts that the trial court properly found that Mother, "at least for portions of the 2010-2014 timeframe, served as

10

the primary residential parent." The State therefore argues that the trial court properly awarded Mother some retroactive child support for Time Period III. However, the State also posits that the trial court's finding that Mother was the primary caregiver for the Child 285 days per year during Time Period III was not supported by the evidence. Upon our careful review, we determine that the trial court did not abuse its discretion in finding that Mother was the PRP during Time Period III and thereby entitled to a corresponding award of retroactive child support.

In its final judgment, the trial court stated in pertinent part:

The Court finds that three Income Shares Worksheets are appropriate.

The Court finds that mother is entitled to child support, including the years of 2010 through 2014, as the child was under the care and control of mother or mother's family during that time.

That Collective Exhibit A shall be used for 81 months from the approximate date the parties separated through December 31, 2003, for a total of $32,724.00; that Collective Exhibit B shall be used for 72 months from January 1, 2004 through December 31, 2009 for a total of $52,200.00; and Collective Exhibit C shall be used for 64 months from January 1, 2010 through April 30, 2014 for a total of $53,952.00.

That retroactive child support is established in the amount of $79,647.00, calculated as of May 31, 2014, retroactive for a period of 217 months. Retroactive support was $138,876.00, but [Father] is credited with paying $59,229.00 for the support of said child.

(Paragraph numbering omitted.)

At the outset, we note that clarification of the ending date of Time Period III is needed. The trial court in its final judgment stated that the third income shares worksheet would be applicable from January 1, 2010, through April 30, 2014. However, the trial court also stated in its final judgment that retroactive child support would be "calculated as of May 31, 2014, retroactive for a period of 217 months." Undisputed testimony demonstrated that the parties separated when the Child was approximately six months of age, which would have been at the end of April 1996. Undisputed testimony also demonstrated that the Child graduated from high school at the age of eighteen at the close of the 2013-2014 academic year, although the exact date of the Child's graduation is not indicated in the record. *See* Tenn. Comp. R. & Regs. 1240-02-04-.02(7)(a) (providing

that a person who turns eighteen while still in high school will continue to be considered a "child" for purposes of the Child Support Guidelines until the person graduates or his class graduates, whichever occurs last). The trial court found the total timeframe for which Father owed a retroactive child support obligation to be 217 months, spanning April 30, 1996, to May 31, 2014. We determine that Time Period III would therefore end on May 31, 2014.

Although not raised as an issue on appeal, we discern an apparent mathematical error in the trial court's calculation of the number of months in Time Periods I and III. The trial court delineated the three time periods as follows:

Time Period I
April 1996 (parties' separation) to December 31, 2003, 81 months
Father's monthly obligation: $404.00, for a total of $32,724.00

Time Period II
January 1, 2004, to December 31, 2009, 72 months
Father's monthly obligation: $725.00, for a total of $52,200.00

Time Period III
January 1, 2010, to May 31, 2014, 64 months
Father's monthly obligation: $843.00, for a total of $53,952.00

However, the number of months actually in each time period is as follows, with calculation of Father's obligation adjusted accordingly:

Time Period I
April [30], 1996, to December 31, 2003, 92 months
Father's monthly obligation: $404.00, for a total of $37,168.00

Time Period II
January 1, 2004, to December 31, 2009, 72 months
Father's monthly obligation: $725.00, for a total of $52,200.00

Time Period III
January 1, 2010, to May 31, 2014, 53 months
Father's monthly obligation: $843.00, for a total of $44,679.00

With this adjustment noted, we proceed with analysis of the issues raised on appeal.

12

Regarding the division of co-parenting time between a PRP and alternative residential parent ("ARP"), the Child Support Guidelines provide as follows in pertinent part:

a) These Guidelines presume that, in Tennessee, when parents live separately, the children will typically reside primarily with one parent, the PRP, and stay with the other parent, the ARP, a minimum of every other weekend from Friday to Sunday, two (2) weeks in the summer, and two (2) weeks during holidays throughout the year, for a total of eighty (80) days per year. The Guidelines also recognize that some families may have different parenting situations and, thus, allow for an adjustment in the child support obligation, as appropriate, in compliance with the criteria specified below.

Tenn. Comp. R. & Regs. 1240-02-04-.04(7) (proceeding to specify criteria for adjustments in child support obligations).

The Child Support Guidelines provide the following definition of "Caretaker":

The person or entity providing primary care and supervision of a child. The caretaker is the child's Primary Residential Parent. The caretaker may be a parent of the child, a non-parent person or agency who voluntarily or, pursuant to tribunal order or other legal arrangement, is providing care and supervision of the child (for example, the child's grandparent). A caretaker may be a private or public agency or person not related to the child providing custodial care and supervision for the child through voluntary or involuntary placement by the child's parent, non-parent relative, or other designated caretaker, or by court order or other legal arrangement (for example, a foster parent). In these rules, the designation "non-parent caretaker" refers to a private or public agency, a non-parent person who may or may not be related to the child, or another designated caretaker who provides the primary care and supervision for the child.

Tenn. Comp. R. & Regs. 1240-02-04-.02(6).

The Child Support Guidelines state that the child support worksheet should reflect "the number of days each child spends with each parent and/or non-parent caretaker." Tenn. Comp. R. & Regs. 1240-02-04-.08(2)(a)(1). "Days" as used in this context are defined as follows:

For purposes of this chapter, a "day" of parenting time occurs when the child spends more than twelve (12) consecutive hours in a twenty-four (24) hour period under the care, control or direct supervision of one parent or caretaker. The twenty-four (24) hour period need not be the same as a twenty-four (24) hour calendar day. Accordingly, a "day" of parenting time may encompass either an overnight period or a daytime period, or a combination thereof.

Tenn. Comp. R. & Regs. 1240-02-04-.02(10).

Regarding a non-parent caretaker who has been granted custody or guardianship of a child, the Child Support Guidelines provide:

If custody or guardianship of a child is awarded to a person or entity other than a parent of the child as defined in 1240-2-4-.02(15), the child support obligation shall be calculated on the Worksheet according to the rules for standard parenting, and each parent will be responsible for paying his/her share of the final obligation to the non-parent caretaker of the child. If only one parent is available, then that parent's income alone is considered in establishing the child support award. The income of a non-parent caretaker is not considered. If the tribunal is able to order both parents to pay support for the children, the tribunal shall assign each parent a pro rata share of the additional expenses.

Tenn. Comp. R. & Regs. 1240-02-04-.03(6)(a)(5); *see also In the Matter of Antar R.W.*, No. W2011-01244-COA-R3-JV, 2012 WL 3055989, at *5 (Tenn. Ct. App. July 27, 2012) ("The State has a legitimate interest in requiring a parent to contribute to the support of his or her children, and it is rational to conclude that the parent's child support obligation should not be reduced due to the income of a non-parent who takes on the responsibility of caring for someone else's child.").

As to a non-parent caretaker's standing to seek child support and the State's ability to seek support on such a caretaker's behalf, Tennessee Code Annotated § 36-5-101 (Supp. 2016) provides in relevant part:

(b)(1) Notwithstanding any other law to the contrary, neither the department of human services, nor any Title IV-D child support contractor of the department, nor any recipient of public assistance in this or any other state or territory, nor any applicant for either public assistance in this or any other state or territory or for Title IV-D child support services from the department or any other Title IV-D

14

agency in this or any other state or territory, shall be required to demonstrate to a court or administrative tribunal that the caretaker of the child for whom child support is sought is vested with any more than physical custody of the subject child or children, in order to have standing to petition for child support from the legal parent of the child or children for whom support is sought, or to seek enforcement or modification of any existing orders involving such child or children.

(2)     Legal custody of a child to whom a child support obligation is owed shall not be a prerequisite to the initiation of any support action or to the enforcement or modification of any support obligation in such cases, whether or not the obligation has been assigned to this state or any other state or territory by operation of law.

Step-Grandfather testified that the Child resided with him from Sunday evening through Friday evening each week that the Child attended high school from August 2010 through the Child's graduation. Step-Grandfather stated that he would take the Child to Mother's home on Friday evenings and pick up the Child on Sunday evenings. Step-Grandfather further testified that he drove the Child to Father's home "on occasions" but that he did not know what percentage of the weekends the Child typically may have spent with Father. Step-Grandfather stated that he relinquished all control of the Child during summers and took the Child to Mother's home as soon as school was released for the summer. According to Step-Grandfather, he enrolled the Child in school when the Child was living with him, but the school's emergency contacts were Mother and Father. He explained that when something happened at school, he was the "first point of contact" because of Mother's illness and that then he would contact Father. Step-Grandfather's testimony regarding his role in the Child's life during the Child's high school years was generally corroborated by the respective testimonies of Father, Mother, and the Child.

Based on this testimony, Father argues that Step-Grandfather should be considered the caregiver providing primary care and supervision of the Child, and thereby the PRP for purposes of child support, during Time Period III. *See* Tenn. Comp. R. & Regs. 1240-02-04-.02(6). We note that in this case, no court order was ever entered naming a PRP prior to the Child's emancipation and that such a designation now is relevant only as to an award of retroactive child support. The law is well settled in Tennessee that because the obligation to support a child follows the child, a non-parent custodian has standing to petition for child support. *See Kirkpatrick v. O'Neal*, 197 S.W.3d 674, 676 (Tenn. 2006) ("Because parents owe child support regardless of the existence of a court order to that effect, third party custodians are entitled to retroactive child support from the date a child is legally placed in their custody.").

15

In support of his argument, Father relies on cases in which a grandparent caretaker petitioned for child support. *See id.* at 678 (concluding that a petition filed by the grandmother who had been appointed as the children's custodian after the mother died should be treated as a petition to establish the father's child support obligation to the grandmother rather than as a petition to modify the existing order granting child support to the deceased mother); *State ex rel. Wray v. Collins*, No. W2006-00119-COA-R3-JV, 2007 WL 836810, at *4-5 (Tenn. Ct. App. Mar. 20, 2007) (concluding that the State had standing to file a petition seeking child support on behalf of the child's grandmother, who had received temporary custody of the child during dependency and neglect proceedings); *State ex rel. Beard v. Hannah*, No. W2005-02350-COA-R3-JV, 2006 WL 1544543, at *2 (Tenn. Ct. App. June 7, 2006) ("The statute is unambiguous in stating that nothing more than physical custody of a child is required to have the legal right to petition for child support from a biological parent.") (citing Tenn. Code Ann. § 36-5-101(b)(1)).

In contrast to the cases relied on by Father, however, the State filed the petition in the instant action on behalf of Mother. Inasmuch as Step-Grandfather has not petitioned for retroactive child support or been added as a party to this action, the trial court did not have subject matter jurisdiction to award child support to Step-Grandfather and properly did not consider such a ruling. *See In re Estate of Reed*, No. W2003-00210-COA-R3-CV, 2004 WL 1488568, at *2 (Tenn. Ct. App. July 1, 2004) ("It is fundamental that '[a] person who is not a party of record to a lawsuit has no standing therein which enables him or her to take part in the proceedings.'") (quoting *United States v. Green,* 42 F.R.D. 351, 352 (E.D. Tenn. 1967)). Moreover, this Court is one "of appeals and errors," and "we are limited in authority to the adjudication of issues that are presented and decided in the trial courts." *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976).

As to the number of days per year during Time Period III that the trial court found Mother to be the parent caring for the Child, the State posits that the court's finding of 285 days is "illogical" given the "state minimum of 180 school days per year" that the Child undisputedly resided with Step-Grandfather. The State stops short, however, of arguing that Step-Grandfather should be considered the PRP for Time Period III. Indeed, neither party has provided authority for the proposition that a non-parent who has never been granted custody of a child and is not seeking custody or support is in a position to be named the PRP. Considering the unique set of facts before us, we have found no authority that would allow for such a designation of Step-Grandfather, a non-party to this case and a family member of Mother's who testified that even when caring for the Child, he considered the parents to be the overriding decision makers and the emergency contacts for the Child.

We note that apart from his main argument, Father also asserts on appeal that due to Mother's health, Maternal Grandmother and Maternal Aunt, rather than Mother, predominantly cared for the Child when the Child was in Mother's home during Time Period III. If we were to adopt Father's argument that Mother should not be considered the PRP on days when she accepted assistance from a family member, whether it be Step-Grandfather, Maternal Grandmother, or Maternal Aunt, we would place the trial court in an untenable position of attempting to apportion various percentages of caretaking days throughout the year among one parent's family members. We find this argument unavailing and not in keeping with the Child Support Guidelines.

Step-Grandfather testified that Mother and the Child maintained a close relationship. Maternal Grandmother, Maternal Aunt, Mother, and the Child each respectively testified that Mother enjoyed a close relationship with the Child, interacted with him, and attempted to do as much as she could for him even when she did not feel well. It is undisputed that during Time Period III, Father remained active in the Child's life, and the Child testified that he often spent portions of holidays and summers with Father. Nonetheless, Father acknowledged that the Child spent less time with him once the Child became a teenager, explaining that the Child often preferred to be with his friends. The Child testified that as he grew older, he stayed with Father sometimes but was with Mother more.

Upon our careful review, we determine that the evidence does not preponderate against the trial court's finding that Mother was the parent with primary responsibility for the Child during Time Period III. We therefore affirm the trial court's finding that Mother was the PRP during Time Period III as well as Time Periods I and II.

VI. Father's Residential Co-Parenting Days

On appeal, Father raises a separate issue regarding the trial court's finding that the Child resided with him for an average of 80 days per year from the time of the parents' separation through the Child's graduation from high school. As Father notes, the trial court in so finding applied the presumptive amount of residential co-parenting days applicable to an ARP. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(7)(a). In responding to Father's arguments on appeal, the State surmised that Father was only appealing the trial court's findings as to Time Period III when the Child was attending high school. Father did not file a reply brief or in any way respond to the State's interpretation that he was not appealing the trial court's findings as to the first two time periods covered by the first two income shares worksheets. *See* Tenn. R. App. P. 27(c). Although the issue raised by Father as to the presumptive finding of 80 days is not a model of clarity, we note that Father has requested the relief of complete reversal or vacation of the trial court's final judgment. We therefore address this issue as it pertains to the entire 217

months of retroactive child support awarded by the trial court. Upon our thorough review, we determine that the evidence does not preponderate against the trial court's finding that Father cared for the Child for the presumptive average of 80 days per year applicable to an ARP during all three time periods.

Father testified that although he never had a set schedule for visitation with the Child, Mother had always agreed to let him take the Child to his home whenever he was able to spend time with the Child. Father acknowledged that the Child spent less time with him during Time Period III than he had in previous years. Father stated that before the Child became a teenager and developed more friends and interests of his own, the Child would spend every weekend or every other weekend with Father. According to Father, Mother often had to work nights and holidays, and if Father were not working, the Child would be with him. Father also testified that the Child spent much of the summer breaks from school staying at Father's home. Father stated that when he served as an assistant coach of the Child's team during football season prior to the Child's high school years, he saw the Child nearly every day, although he acknowledged that the Child resided with Mother during the week. At one point, Father stated that from age one to age ten, the Child spent approximately half the days with Father. However, upon cross-examination on this point, Father could not describe a co-parenting schedule that provided him with half of the days. He clarified that when he was not working, he tried to spend time with the Child.

Mother corroborated Father's testimony that the parents had never developed a regular, set schedule for Father's co-parenting time. She testified that when the Child was one to ten years old, Father visited with the Child semi-regularly. She acknowledged that Father had served as an assistant coach of the Child's football team but stated that she attended practice also. Maternal Grandmother and Maternal Aunt each respectively testified that Mother or one of her family members transported the Child to and from football practice. Mother also acknowledged that Father handled the Child's dental and orthodontist appointments, and the parties stipulated to relevant costs previously paid by Father. When specifically questioned, Mother denied that the Child had ever spent half the days in a year with Father.

The Child testified that as he was growing up, he resided with Father approximately half of the weekends during the school year and a period of time each summer. He stated that he usually spent time at Father's home during "big holidays like Christmas," particularly when Mother had to work on holidays. According to the Child, he typically spent three consecutive weeks at Father's home during the summertime, and overall, he resided with Father for thirty to forty days out of sixty during the summers. He stated that during a typical Christmas vacation from school, he would be at his Father's home for approximately ten days. The Child also stated, however, that he

typically spent the majority of time over spring breaks with Mother and that he would usually celebrate Thanksgiving with Mother. The Child further testified that as he grew older, he still stayed with Father sometimes but was with Mother more, explaining: "I just stay with my mom because she got sick or whatever and I just always be with her most of the time."

Other testimony varied as to the amount of time the Child had resided with Father prior to 2010. For instance, Stepmother testified that the Child resided with Father and her for entire summer vacations, but Maternal Aunt, who had lived with Mother, testified that Father would visit the Child approximately once a month during football season but not at all during other times. Noting that the trial court did not make explicit credibility determinations, Father questions the credibility of Mother and witnesses who testified on her behalf. Upon careful review, we determine that the trial court impliedly weighed the credibility of the various witnesses concerning Father's co-parenting time with the Child. We emphasize that "[w]hen credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witness' demeanor and to hear in-court testimony." *See Morrison*, 338 S.W.3d at 426. We therefore conclude that the evidence does not preponderate against the trial court's finding that the presumptive number of 80 co-parenting days per year applied to Father as the ARP during all of the Child's minority.

## VII. Modification of Judgment

The trial court's mathematical error in calculating the number of months in Time Periods I and III, explained in a prior section of this Opinion, requires modification of the judgment. We therefore modify the judgment to apply the first income shares worksheet (collective exhibit A) for 92 months rather than 81, spanning April 30, 1996, through December 31, 2003, and the third income shares worksheet (Collective Exhibit C) for 53 months rather than 64, spanning January 1, 2010, through May 31, 2014. Applying the trial court's finding that Father's monthly obligation during Time Period I was $404.00, we modify Father's total retroactive child support obligation for Time Period I to be $37,168.00, rather than the amount of $32,724.00 originally entered by the trial court. Likewise, applying the trial court's finding that Father's monthly obligation during Time Period III was $843.00, we modify Father's total retroactive child support obligation for Time Period III to be $44,679.00, rather than the amount of $53,952.00 originally entered by the trial court.

We affirm the trial court's findings as to Time Period II, spanning January 1, 2004, through December 31, 2009, without modification. The trial court applied the second income shares worksheet (collective exhibit B) for 72 months, finding that

Father's monthly obligation during Time Period II was $725.00 for a total retroactive child support obligation of $52,200.00 for Time Period II.

As modified, Father's total child support obligation for all three time periods combined is $134,047.00. Affirming the trial court's undisputed credit to Father of $59,229.00 in expenses and support previously paid, we modify Father's total retroactive child support obligation to $74,818.00, rather than the $79,647.00 previously entered by the trial court.

## VIII. Conclusion

For the reasons stated above, we affirm the trial court's judgment with modification to correct a mathematical error in the calculation of the number of months in Time Periods I and III. We modify the trial court's judgment to correct the number of months in Time Period I, spanning April 30, 1996, through December 31, 2003, from 81 to 92 and to correct the number of months in Time Period III, spanning January 1, 2010, through May 31, 2014, from 64 to 53. Applying these modifications, we further modify the amount of Father's child support obligation for Time Period I from $32,724.00 to $37,168.00 and for Time Period III from $53,952.00 to $44,679.00, yielding a total retroactive child support obligation owed by Father to Mother, of $74,818.00, rather than the $79,647.00 previously entered by the trial court. We affirm the trial court's judgment in all other respects, including the trial court's determination of Father's child support obligation for Time Period II, spanning January 1, 2004, through December 31, 2009, in the total amount of $52,200.00 and the court's credit to Father of $59,229.00 previously paid in expenses and support. We remand to the trial court for enforcement of the judgment as modified and collection of costs below. Costs on appeal are taxed to the appellant, Deadrick Donnell Woods, Sr.

_____
THOMAS R. FRIERSON, II, JUDGE