IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 10, 2024

## STATE OF TENNESSEE EX. REL KATHY GARBUS v. LAZARO RAMOS

**Appeal from the Juvenile Court for Tipton County**
No. 09-JV-297      William A. Peeler, Judge
_____

**No. W2022-00334-COA-R3-JV**
_____

This appeal arises from an order establishing the amount of retroactive child support owed by the father for the care of two of his children. The father challenges the trial court's decision to impute income to him for the purposes of instituting that order. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Jeffery L. Stimpson, Munford, Tennessee, for the appellant, Lazaro Ramos.

Jonathan Skrmetti, Attorney General and Reporter, and Amber L. Barker, Senior Assistant Attorney General, for the appellee, the State of Tennessee ex. rel Kathy Garbus.

## MEMORANDUM OPINION[1]

## I. FACTS & PROCEDURAL HISTORY

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Lazaro Ramos ("Father") is the biological father of four children. The children have two different mothers. This case concerns only the retroactive child support awarded for the care of Father's two oldest children. Those children have been under the care of Kathy Garbus, who is their maternal grandmother ("Grandmother"), since 2006. Grandmother adopted the children in 2018 when Father voluntarily surrendered his parental rights.

On June 24, 2009, the State of Tennessee brought a petition on behalf of Grandmother to set the level of child support which Father would be obligated to pay on a monthly basis. The proceedings contemplated both continuing support and a child support arrearage based on a 2006 custody order. Father initially signed a waiver of service of process which had been executed on June 4, 2009. On June 24, 2009, the State also filed a Motion for Default Judgment against Father. On September 11, 2009, the court entered a default judgment against Father and ordered him to pay $728.00 per month in current support and $72.00 per month toward a child support arrearage of $13,653.00.

In 2010, a petition for civil contempt was filed by the State of Tennessee for Father's failure to comply with the 2009 child support order. In 2020, another petition for civil contempt was filed. This petition alleged that Father had not complied with the 2009 order and that he was in arrears in the sum of $92,034.36. In response to this petition, Father raised the defense of lack of "en [sic] personam" jurisdiction and claimed that the default judgments were void. Father argued that the order was entered without personal service. Father also argued that the initial waiver of process was signed prior to the proceeding having commenced, that he was not subsequently served with process, and thirty days had not expired from the date of the waiver or from the petition to set support. The trial court then held that the original order of default entered in 2009 was to be set aside due to its being set prior to the required thirty-day timeframe for a response. Also in that order, the trial court ordered Father to obtain his tax returns for the years 2007 through 2020 and to provide those returns to the State (or to obtain written proof of an attempt to obtain the returns) to determine his income for purposes of setting his child support obligations.

Father failed to provide any of his tax returns. On the day of the hearing on the matter, Father's counsel stated that Father had only filed a tax return in 2020 and that he had done so with the help of a professional tax preparer, but this preparer was not located prior to trial to provide documents or testimony regarding the matter. The trial judge stated that while the tax documents would be the "best evidence" of Father's income, if they could not be located, then he would hear his testimony and would rely on it unless he believed the testimony to be "suspect." If the testimony was deemed to be "suspect," the trial judge explained, then income would be imputed to Father. An affidavit of income was filed that morning, which listed Father's income at $1,900.00 per month with stated expenses listed at $1,801.00 per month. This affidavit also listed in the "PRESENT MONTHLY LIVING EXPENSES" section $498.00 worth of SNAP food stamps, which apparently Father was actually claiming that he received each month. No tax records, pay stubs, or other monetary records were ever presented as evidence. Father did testify regarding his income.

Father testified that he is a mechanic by trade. He stated that he was a truck driver at the time that the children began living with their grandmother, and he then worked as a mechanic making $550 per week from 2006 until sometime in 2007. Father then stated that he stopped working and began using drugs because he was not being allowed to see his children. Father was imprisoned for a year in "the Penal Farm" in 2008 for domestic violence. He was subsequently incarcerated for about two years in Harris County, Texas, and released in 2011. Father's driver's license was suspended in 2008, and it has never been restored.

Father testified that when the first of his younger children was born in 2016 that he began working again as a light mechanic for $100 per day. Father testified that a car rolled over him while he was working in 2007, causing injury which still prevents him from lifting over 75 pounds. Neither a worker's compensation claim nor a lawsuit were filed regarding the matter. No medical records or photographs were entered into evidence regarding this incident, but Father testified that the accident "destroyed all his organs", that he received 67 stiches, and that he was airlifted to the hospital. At some point, Father ceased engaging in regular mechanic work.

Father claims to have a "side-job" in which he diagnoses car issues and does some mechanic work. Father stated that this type of work is considered specialty work and an expertise. Father further testified to the expenses listed on the affidavit of income filed with the trial court the morning of the trial. Father was questioned regarding the amount of his monthly income which was listed at $1,900.00 per month. Father was asked about this amount and stated only, "that's what my lawyer put." Father later testified that he had some months where he did "very well financially" and other times where he "had slow weeks." He further stated that he does not keep records of income or expenditures. Father testified that the cell phone bill listed on the affidavit was actually paid by his mother. Father also testified that he pays his father $150 per month to drive him to and from work, and that he pays insurance on the car in the amount of $180 per month.

Father submitted a lease agreement for a government subsidized apartment which he rents at a price of $600 per month. His wife and the couple's two children also reside in the apartment. Father stated that he sometimes has issues making the $600 rental payment. Father testified that he can read and write and that he completed a high school education and two years of college level education.

Regarding his employment prospects, Father stated that he "could go to work at" Infiniti of Memphis making $28 per hour but claimed that they will not hire him because his injury prevents him from lifting 75 pounds. Father stated that he was offered a job at an auto parts store in Bartlett at a rate of $12-$14 per hour but that he turned down the opportunity as the commute was too far for his father to drive him. Father stated that he could go back to driving trucks but that he would need his license reinstated and to pass a

recertification. Father finally testified that he does not live an extravagant lifestyle but that he still gives the children at issue in this case money if they ask for it. This concluded Father's testimony.

At a later hearing, Grandmother testified by phone, and receipts were provided as to the amounts paid for childcare during the time at issue. The court found that Father owed child support for a period of February 2006 through the children's adoption in December 2018. The court determined that work-related childcare expenses of $783.00 per month were reasonable from 2006 through 2015. Further, the trial court determined that Father had not presented reliable evidence of income, but that Father did have the ability to earn more than minimum wage. Consequently, the trial court imputed Father's income at $3,132.42 per month for the months stated in the order. Father was charged for the work-related childcare of the relevant period and given credit for the children living in his home. Father's monthly payment was set at $1,200 per month towards a total retroactive child support award of $186,788.

Father filed a motion to alter or amend this judgment alleging a failure by the trial court to consider factors stated in the Tennessee Child Support Guidelines and a failure to consider the reasonableness of the payment. The trial court denied the portion of the motion related to the failure to consider the factors and reduced Father's payment from $1,200 per month to $800 per month, recognizing the settlement reached between the State and Father. Father then appealed to this Court. In response, the State filed a motion to remand the case for entry of a new final order which would contain sufficient written findings of facts and conclusions of law of the trial court to support its judgment. This motion was unopposed and was granted by this Court. The trial court then entered an order containing its findings and conclusions. Father had the opportunity to amend his appellate brief filed after this order was granted but refrained from doing so.

## II. ISSUE PRESENTED

The sole issue on appeal is whether the trial court abused its discretion by imputing income to father to calculate his retroactive child support obligation. For the following reasons, we affirm the decision of the juvenile court and remand for further proceedings consistent with this opinion.

## III. DISCUSSION

Father claims that the juvenile court failed to consider the factors contained in the Tennessee Child Support Guidelines when determining whether it was appropriate to impute his income for the purposes of the child support order.

"Determinations regarding child support are reviewed under an abuse of discretion standard." *State ex rel. Williams v. Woods*, 530 S.W.3d 129, 136 (Tenn. Ct. App. 2017).

Further, "' decisions regarding child support must be made within the strictures of the Child Support Guidelines.'" *Id*. (quoting *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005)). Despite the existence of the Guidelines, a trial court's child support decision still carries some discretion. The trial court will only be deemed to have abused its discretion "'when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.'" *Id*. (quoting *Richardson*, 189 S.W.3d at 725). "Under the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)).

The Tennessee Child Support Guidelines allow courts to impute income to a parent in specific situations. *Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009). To impute income means to "assign or attribute an income level to a parent that may not reflect the parent's actual gross income." *Id*. at 795. The circumstances in which it is appropriate for a court to impute income are set out in the Guidelines, which provide:

> (i) Imputing additional gross income to a parent is appropriate in the following situations:
>
> > (I) If a parent has been determined by a tribunal to be willfully underemployed or unemployed; or
> > (II) When there is no reliable evidence of income due to a parent failing to participate in a child support proceeding or a parent failing to supply adequate and reliable financial information in a child support proceeding; or
> > (III) When the parent owns substantial non-incoming producing assets, the court may impute income based upon a reasonable rate of return upon the assets.

Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(i). The Guidelines specifically address how to analyze each of these situations. Regarding the lack of reliable evidence of income, it provides:

> (iv) Imputing Income When There is No Adequate and Reliable Evidence of Income.
> > (I) When Establishing an Initial Order.
> I. If a parent fails to produce adequate and reliable evidence of income (such as tax returns for prior years, check stubs, or other information for determining current ability to support or ability to support in prior years for calculating retroactive support); and
> II. The tribunal has no adequate and reliable evidence of the parent's income

or income potential;

III. Then, in such cases, the tribunal must take into consideration the specific circumstances of the parent to the extent known, including, but not limited to, the following factors:

A. Assets;

B. Residence;

C. Employment and earnings history;

D. Job skills;

E. Educational attainment;

F. Literacy;

G. Age;

H. Health;

I. Criminal record and other employment barriers;

J. Records of seeking work;

K. The local job market;

L. The availability of employers willing to hire the parents;

M. Prevailing earnings level in the local community; and

N. Other relevant background factors.

IV. If imputation of income is authorized, gross income for the current and prior years shall be determined by imputing annual gross income of forty-three thousand seven hundred sixty-one dollars ($43,761) for male parents and thirty-five thousand nine hundred thirty-six dollars ($35,936) for female parents. These figures represent the full time, year-round workers' median gross income, for the Tennessee population only, from the American Community Survey of 2016 from the U.S. Census Bureau.

Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iv). Notably, this Guideline has recently been amended, with subsection (III) and its list of factors being an entirely new addition to the Guideline. *See 2020 TN REG TEXT 526643 (NS)*; *Al Qaisi v. Alia*, No. M2020-00390-COA-R3-CV, 2021 WL 345416, at *7 (Tenn. Ct. App. Jan. 28, 2021) (quoting the former version of the Guidelines).

A court may or may not believe a parent's proof as to his or her finances and may deem such evidence unreliable even if it is the type listed in the guidelines. *Al Qaisi*, 2021 WL 345416, at *9. "'If the court finds the evidence presented of the obligor's income is not credible, it may impute income and determine the amount of child support accordingly.'" *Id*. (quoting *Gulvartian v. Gulvartian*, No. E2002-03117-COA-R3-CV, 2004 WL 343599, at *3 (Tenn. Ct. App. Feb. 24, 2004); *see also In re Faith A.F.*, No. M2011-02563-COA-R3-JV, 2013 WL 3941085, at *10-11 (Tenn. Ct. App. July 26, 2013) (explaining that the trial court was permitted to impute income to the father due to not believing father's testimony regarding his finances and thus deeming father's evidence of income unreliable.)

The trial court stated in its opinion that Father "failed 'to produce adequate and reliable evidence of income.'" Here, the trial court clearly did not deem the testimony of Father to be reliable evidence. When this occurs, a court "shifts its focus to determine if there is reliable evidence regarding the parent's income potential." *State ex rel. Collins v. Singh*, No. W2022-00239-COA-R3-JV, 2024 WL 3336432, at *5 (Tenn. Ct. App. July 9, 2024) (citing *In Re Samuel P.*, No. W2016-01665-COA-R3-JV, 2018 WL 1046784, at *14 (Tenn. Ct. App. Feb. 23, 2018)). The trial court concluded that it had "no adequate and reliable evidence of the Respondent's income or income potential." Here, Father does not claim an abuse of discretion related to the trial court's findings of a lack of evidence to establish income or income potential. Rather, Father argues that the trial court "failed to make any findings relative to the factors set forth in Tenn. Comp. R & Regs. 1240-02-04-.04(3)(a)(2)(iv)(I)(III)."

When imputing income for the calculation of child support, the trial court is required to make written findings of fact and conclusions of law in accordance with Tennessee Rule of Civil Procedure Rule 52.01. Here, there was no written set of findings made prior to the initial filing of this appeal. If a court fails to provide such findings, a judgment may be vacated, and the case remanded to the trial court only for the purposes of stating such findings. *Yarbrough v. Mitchell*, No. W2021-01174-COA-R3-CV, 2023 WL 2335721, at *5 (Tenn. Ct. App. March 3, 2023) (citing *Hardin v. Hardin*, No. W2012-00273-COA-R3-PT, 2012 WL 6727533, at *5 (Tenn. Ct. App. Dec. 27, 2012)). However, this case was remanded to the trial court which then provided its findings in a separate order. In this order, the trial court expressly listed and stated the consideration given to each of the relevant factors and stated those factors which were not argued by Father and would have been considered had they been raised. The State argues that this cured any potential issue that would have existed related to the failure of the trial court to make written conclusions regarding the factors. We agree. Notably, Father did not object to the State's motion to remand and did not file any supplemental brief after the subsequent written findings of fact and conclusions of law were entered by the trial court. After this Court received the supplemental order, we entered an order which afforded Father the opportunity to file an amended brief based on the new information contained in the supplemental order. However, Father failed to do so. The State then filed its brief as appellee, to which Father chose not to file a reply.

In its supplemental order, the trial court states that it considered the Guideline factors and then lists specific facts it took into consideration for each one. Regarding Father's assets and residence, the court found that Father resided in a government subsidized apartment and that he produced a copy of his lease and a "self-serving" affidavit of income and expenses. Regarding his employment, job skills, and earnings history, the court noted Father's past and current employment as a mechanic, his testimony that he could make $28 per hour, and his special skill assessing problems with cars. As for his educational attainment and literacy, the trial court stated that it considered Father's education of a high school degree, two years of college education, and his ability to read

and write. Regarding his age and health, the trial court commented on the "relatively young" age of Father being 45 at the time of proceedings and that he appeared to be in good health, but it also considered his claimed injury which limited his ability to work. The court noted the lack of evidence regarding the injury to Father, pointing out the failure to provide "any evidence to substantiate the injury" such as a physician's letter or evidence of a lawsuit, worker's compensation claim, or claim for disability. With regard to his criminal record, the trial court noted Father's criminal history and dates of incarceration. For the remaining factors, the trial court pointed to a lack of evidence regarding any records of Father seeking employment, job conditions in the area, availability of employers, or the prevailing earnings in the community. Each of these findings relate to Father's circumstances at the time of the hearing and comport with those factors listed in the Guidelines.

Because Father failed to file an amended brief after entry of the trial court's supplemental order, his brief rests on his original argument that the trial court "failed to make any findings relative to the factors." As it is, Father's brief contains no analysis of the trial court's subsequent findings regarding each factor.

Father's brief did discuss several of the factors and make its own claims regarding its view of the circumstances surrounding Father. However, these are merely restatements of the same evidence offered at trial and considered by the court and none of these arguments indicate a failure of the trial court to consider the relevant factors.

Having carefully reviewed the record, we cannot say that the trial court abused its discretion. In its written findings, the trial court outlined its determination that the evidence submitted by Father regarding his current income was unreliable and that there was no other sufficient evidence to make a finding regarding Father's income or income potential. Further, the trial court stated its findings regarding the specific factors regarding Father's circumstances as required by the Guidelines. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iv).

## IV. CONCLUSION

For the reasons stated above, the decision of the trial court is affirmed and remanded. Costs of this appeal are taxed to the appellant, Lazaro Ramos, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE