IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2025

## DEMARCUS KEYON COLE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-24-132 & C-24-151          Donald H. Allen, Judge**

_____

### No. W2024-01276-CCA-R3-ECN
_____

In 2013, a Madison County jury convicted the Petitioner, Demarcus Keyon Cole, of first degree felony murder and especially aggravated robbery, and the trial court imposed a life sentence. The Petitioner challenged the sufficiency of the evidence, and this court affirmed his convictions. *State v. Cole*, No. W2013-02850-CCA-R3-CD, 2016 WL 2859196 (Tenn. Crim. App. Dec. 22, 2014), *perm. app. denied* (Tenn. 2015). The Petitioner subsequently filed a petition for post-conviction relief, and multiple petitions for writ of error *coram nobis*, which alleged the discovery of various forms of new evidence. *Cole v. State*, No. W2024-00697-CCA-R3-ECN, 2025 WL 884073 (Tenn. Crim. App., March 21, 2025). The Petitioner filed two more petitions for error coram nobis, both of which were denied by the *coram nobis* court and which have been consolidated for the purposes of this appeal. The Petitioner also filed a motion to recuse, which was not heard by the *coram nobis* court. The Petitioner appeals, arguing that the *coram nobis* court erred by denying relief and by failing to rule on the motion to recuse. We affirm the judgment of the *coram nobis* court in case number C-24-132. In case number C-24-151, the coram nobis court did not rule on the Petitioner's motion to recuse, and accordingly, we remand the case to the *coram nobis* court for a ruling on the Petitioner's motion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part and Remanded in Part**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR. and MATTHEW J. WILSON, JJ., join.

Demarcus Keyon Cole, Only, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; and Jody S. Pickens, District Attorney General, for the appellee, State of Tennessee.

# OPINION
## I. Facts

A Madison County jury convicted the Petitioner of first degree felony murder and especially aggravated robbery. The Petitioner received consecutive sentences of life plus twenty years. *Cole*, 2025 WL 884073, at *1. On direct appeal and a later appeal from the denial of a prior petition for error *coram nobis*, this court summarized the facts and procedural history as follows:

> [T]he [Petitioner] spent the evening of October 28-29, 2011, using cocaine and partying with friends at his Jackson apartment before he and two accomplices shot and robbed the victim, Demetris Cole. The victim died of his injuries two days later, and the [Petitioner] was subsequently indicted for first degree premeditated murder, first degree felony murder, and especially aggravated robbery. The first degree premeditated murder count was, however, [dismissed] prior to trial.

> The first witness at the [Petitioner's] trial was Ebony Jenkins, who spent the evening of October 28-29 at the [Petitioner's] apartment and was present when the victim was shot. She said the [Petitioner], whom she had known for about a week, picked her up and took her to his apartment at about 9:00 p.m. that night and, after putting his two-year-old son to bed, used cocaine with her in the apartment. The victim arrived at about 10:00 p.m., and the three of them drank beer and smoked marijuana together. . . . . [Ms. Jenkins] said [the victim] was in the living room weighing and bagging the marijuana when the [Petitioner] and two other men came into the apartment. As the three men walked to the back of the apartment, the victim asked which one wanted the bag of marijuana. Approximately thirty seconds later, the shorter of the [Petitioner's] two companions returned to the living room and said, "This is a f* * *ing robbery" as he pulled a gun on the victim. . . . . She then heard two gunshots, followed by three more gunshots. After hearing "the aggressor" leave the apartment, she removed the blankets from her head to find the victim lying on the floor covered in blood.

> . . . .

> On cross-examination, [Ms.] Jenkins clarified that the scuffle between the aggressor and the victim did not ensue until after the [Petitioner] had left the apartment. She acknowledged that the [Petitioner] was not in the apartment when the victim was shot.

2

. . . .

Kyneshia Williams, the [Petitioner's] girlfriend at the time of the shooting, testified that she had met the victim through the [Petitioner], who purchased cocaine from him. She said the [Petitioner] called her at 3:53 a.m. on October 29, 2011, to ask her if she would "set up [the victim] at a store in Jackson so that [the Petitioner] could rob him." The [Petitioner] told her he was hoping to get "dope and money." When she refused to participate, the [Petitioner] asked if she was sure and then said, "Well, let me know so I can make other plans." . . . . The following Sunday, the [Petitioner] showed up at her house. When she asked him about the victim, he told her that the victim had been shot five times with a hollow point .32 caliber weapon—twice in the head, once in the arm, once in the chest, and once somewhere else—and that he was dead. [Ms.] Williams testified that she had been in the [Petitioner's] apartment in the past and that the [Petitioner] had shown her a .40 caliber silver gun that he kept on top of his mirror in his bedroom and a .32 caliber gun that he kept in his closet.

. . . .

LeGraine Poston, who acknowledged that he had a conviction for attempted aggravated burglary, testified that in February 2013, he was incarcerated at the Madison County Jail in the same pod as the [Petitioner], who, agitated and seeking advice, told him about his case. According to [Mr.] Poston, the [Petitioner] said that he had set the victim up for a robbery because he wanted to "get high," that all that was supposed to happen was a robbery but that things had not gone according to plan, and that he did not want to take the blame for something that someone else had done.

*Cole*, 2014 WL 7269813, at *1-5.

On November 15, 2013, [the] Petitioner was convicted of felony murder and especially aggravated robbery and was sentenced to consecutive terms of life and twenty years. This court affirmed the trial court's judgments. *State v. Cole*, No. W2013-02850-CCA-R3-CD, 2014 WL 7269813, at *1 (Tenn. Crim. App. Dec. 22, 2014), *perm. app. denied* (Tenn. May 18, 2015). [The] Petitioner subsequently filed a petition for post-conviction relief alleging ineffective assistance of counsel at trial. *Cole v. State*, No. W2015-01901-CCA-R3-PC, 2016 WL 2859196, at *1 (Tenn. Crim. App. May 11, 2016), *perm. app. denied* (Tenn. Sept. 26, 2016). At the hearing, [the] Petitioner testified that trial counsel was deficient in not

3

challenging the testimony of his girlfriend at the time of the offense, [Ms. Williams], about a phone call from [the] Petitioner asking her to "set up [the victim] at a store in Jackson so that [the Petitioner] could rob him." *Id.* at *5. This court affirmed the post-conviction court's denial of the petition for post-conviction relief. *Id.* at *12.

On January 4, 2022, [the] Petitioner filed pro se a petition for writ of error coram nobis ("the 2022 Petition") claiming "newly discovered evidence that the prosecutor and law enforcement threatened Ms. Williams with criminal charges and the removal of her children from her custody to compel her to testify at trial." *Cole v. State*, No. W2023-00517-CCA-R3-ECN, 2023 WL 8947153, at *3 (Tenn. Crim. App. Dec. 28, 2023) *perm. app. denied* (Tenn. July 18, 2024). On May 6, 2022, [the] Petitioner filed a pro se amended petition, "claiming newly discovered evidence of a supplemental police report" showing that officers interviewed [Mr.] Poston regarding his conversation with [the] Petitioner at the jail more than two months before Mr. Poston submitted a formal written statement. *Id.* On January 12, 2022, Judge Howell, then a practicing attorney, was appointed by the court to represent [the] Petitioner. By Order Substituting Counsel entered February 22, 2022, the District Public Defender was substituted for Judge Howell as counsel for [the] Petitioner. Judge Howell represented [the] Petitioner for approximately forty-one days. On May 19, 2022, William J. Milam was substituted for the District Public Defender as counsel for [the] Petitioner. On April 6, 2023, Judge Allen dismissed the 2022 Petition, and this court affirmed the judgment on appeal. *Id.* at *7. As relevant here, this court determined that "[d]uring the evidentiary hearing, [the Petitioner], through counsel, abandoned the claim relating to Ms. Williams'[s] testimony and announced that he was only pursuing the claim relating to the supplemental police report" and concluded [the] Petitioner's claim that Ms. Williams'[s] testimony was coerced "was waived." *Id.* at *6.

On March 15, 2024, [the] Petitioner, acting pro se, filed his second petition [in case number C-24-66] for writ of error coram nobis ("the 2024 Petition") in "Division I" of the Twenty-Sixth Judicial District. [The] Petitioner claimed that he did not "learn about the newly discovered evidence of recanted testimony" of Ms. Williams until January 5, 2024. On March 27, 2024, the State filed a response and motion to dismiss the 2024 Petition. [The] Petitioner filed a Uniform Civil Affidavit of Indigency, and on April 2, 2024, Judge Howell entered an order allowing the 2024 Petition to be filed under a pauper's oath. On April 12, 2024, [the] Petitioner filed his reply to the State's response.

4

On April 24, 2024, [the] Petitioner filed a motion to recuse Judge Howell pursuant to Rule 10B of the Tennessee Supreme Court and requested the matter to be transferred to Division II "Judge Atkins (an impartial judge)" for the following reasons:

> 1) [Judge] Howell previously represent[ed] the [P]etitioner in case number [C]-22-2 [and] this would be a conflict of interest[,] please see attachment.

> 2) That the motion is not being presented for any improper purpose, such as to harass or cause unnecessary delay or need[ ]less increase in cost of litigation.

Attached to the motion to recuse was a copy of the January 12, 2022 order appointing Judge Howell to represent [the] Petitioner in the coram nobis proceeding. Although there is no written order in the record granting the motion to recuse, the case was transferred to Division II as requested by [the] Petitioner and was not heard by Judge Howell.[4]

On May 2, 2024, Judge Allen, the Circuit Judge for Division II, entered an order finding that the 2024 Petition was time-barred because it was not filed within the one-year statute of limitations of Tennessee Code Annotated section 27-7-103; that the affidavit of Ms. Williams was not new evidence of actual innocence discovered after expiration of the limitations period; that [the] Petitioner was not entitled to equitable tolling of the statute of limitations; and that any issue regarding Ms. Williams "allegedly being threatened was waived by [the] Petitioner during [the 2022] Petition, and [the Petitioner] is barred from proceeding at this time by res judicata."

[The] Petitioner filed a timely notice of appeal from the judgment summarily dismissing the 2024 Petition. The trial court clerk's "Certificate of Appellate Record" certified that items transmitted to the Court of Criminal Appeals included "all [of] the designated papers on file in my office in the captioned case." The note to the clerk's certification states, "the motion to recuse that was filed 4/24/24, no order filed."

*Cole*, 2025 WL 884073 *1-2 (footnotes omitted).

5

On appeal of the denial of his 2024 Petition, the Petitioner raised a single issue claiming that Judge Allen had erred when he did not rule on the Petitioner's motion to recuse Judge Howell. The State argued that the lack of a written order granting or denying the motion to recuse was not fatal because Judge Allen did not act in bad faith in dismissing the 2024 Petition. We agreed, concluding that Judge Allen had the authority to dismiss the 2024 Petition and did not err by failing to rule on the motion to recuse Judge Howell. We went on to state:

> When a motion to recuse is made, a judge should grant the motion whenever his or her "impartiality might reasonably be questioned." Tenn. Sup. Ct. R. 10, § 2.11(A). Based on the record before us, Judge Howell's only involvement in the present case was before the motion to recuse was filed when he signed an order allowing the 2024 Petition to be filed upon a pauper's oath. It does not appear that Judge Howell entered any "further orders" or took "further action on the case." Tenn. Sup. Ct. R. 10B, § 1.02. Nevertheless, despite the shortcomings of the motion and the short period of time that he previously represented [the] Petitioner, Judge Howell should have acted "promptly by written order" and granted the motion based on his prior representation of Petitioner in the 2022 Petition. Tenn. Sup. Ct. R. 10B, § 1.03.

> The record is clear that the judge who entered the order summarily dismissing the petition, Judge Allen, was not the judge whom [the] Petitioner moved to disqualify. In fact, Judge Allen was the judge of the very division to which [the] Petitioner asked that his case be transferred. It was not Judge Allen's responsibility to rule on the motion seeking the recusal of Judge Howell. Although the record does not contain an order of the presiding judge moving the case to Division II, "the absence of an appointment order is a procedural error" that is not necessarily fatal. *State ex rel. Williams v. Woods*, 530 S.W.3d 129, 138 (Tenn. Ct. App. 2017).

> Moreover, "[a]ny judge or chancellor may exercise by interchange, appointment, or designation the jurisdiction of any trial court other than that to which the judge or chancellor was elected or appointed." Tenn. Code Ann. § 16-2-502. As a duly elected circuit court judge in the Twenty-Sixth Judicial District, Judge Allen had the authority to sign an order dismissing a case filed and pending in the circuit court in his district. *See Dash v. Carlton*, No. E2001-02867-CCA-R3-PC, 2002 WL 31026613, at *2 (Tenn. Crim. App. Sept. 11, 2002), *perm. app. denied* (Tenn. Dec. 23, 2002) (noting that a criminal court judge had the authority to sign an order dismissing a writ of habeas corpus filed and pending in the circuit court). Absent bad faith, the

6

decisions of a judge acting under the color of law will be binding on the parties. *See Woods*, 530 S.W.3d at 138 (citations omitted).

> . . . .

> This appeal was complicated unnecessarily by the failure to promptly enter a written order either granting or denying the motion to recuse. Even though Judge Howell's involvement was limited to entering an order allowing the filing of the 2024 Petition upon pauper's oath, he should have promptly ruled on the motion to recuse. We remand the case to the trial court for Judge Howell to enter an order granting the motion to recuse. . . . . The judgment dismissing the [2024] Petition is affirmed.

*Cole*, 2025 WL 884073, at *2-3.

Later in 2024, the Petitioner filed his third and fourth petitions for writ of error *coram nobis*, case numbers C-24-132 and -151, respectively, both of which he acknowledged were untimely. The Petitioner claimed that "later-arising" grounds for the petitions existed in the form of recanted witness testimony and thus the statute of limitations should be tolled. Also in 2024, the Petitioner filed a motion in case number C-24-151 for Judge Allen to recuse himself. The *coram nobis* court summarily dismissed both petitions, stating that the Petitioner had not presented newly discovered evidence or later-arising grounds for relief. As relevant on appeal, the *coram nobis* court did not rule on the Petitioner's motion to recuse Judge Allen prior to dismissing the *coram nobis* petitions. The Petitioner appealed the *coram nobis* court's judgments, and this court consolidated the appeals of both judgments.

## II. Analysis
## A. Motion to Recuse

On appeal, the Petitioner contends that the *coram nobis* court erred when, in case number C-24-151, it did not rule on his motion to recuse Judge Allen prior to the *coram nobis* court's denials of his petitions for writ of error *coram nobis*. He asserts that this was done in violation of Tennessee Supreme Court Rule 10B. The State responds that there is an "arguable motion to recuse" based on the Petitioner's assertion that his *coram nobis* petition was filed in the wrong court division. The State questions the validity of the motion but concedes that, if this court determines it to be a valid motion, the *coram nobis* court erred when it did not rule on the motion to recuse Judge Allen prior to dismissing the Petitioner's filings.

Tennessee Supreme Court Rule 10B provides, in pertinent part, as follows:

1.01. Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a written motion filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal.

1.02. While the motion is pending, the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated in the order in which such action is taken.

1.03. Upon the filing of a motion pursuant to section 1.01, the judge shall act promptly by written order and either grant or deny the motion. If the motion is denied, the judge shall state in writing the grounds upon which he or she denies the motion.

We agree with the Petitioner that the *coram nobis* court failed to consider his motion to recuse and failed to act promptly by written order, as required by Tennessee Supreme Court Rule 10B section 1.03. As we concluded in an earlier opinion on the Petitioner's first motion to recuse, the *coram nobis* court should have promptly ruled on the Petitioner's motion, and we remand this matter for the court to do so.

## B. Writ of Error *Coram Nobis*

The Petitioner also contends that the *coram nobis* court erred when it summarily dismissed his petitions. The State further responds that the *coram nobis* court did not err when dismissing the untimely petitions because neither petition presented newly discovered evidence sufficient to toll the statute of limitations. We agree with the State.

A writ of error *coram nobis* is available to a defendant in a criminal prosecution. T.C.A. 40-26-105(a)(2018). The decision to grant or to deny a petition for the writ of error *coram nobis* on its merits rests within the sound discretion of the trial court. *State v. Ricky Harris*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007)). Tennessee Code Annotated section 40-26-105(b) provides, in pertinent part:

Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to

8

matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

A writ of error *coram nobis* is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn.1999); *State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). As previously noted by this court, "the purpose of this remedy 'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1996)).

To establish that he is entitled to a writ of error *coram nobis*, the Petitioner must show: (a) the grounds and the nature of the newly discovered evidence; (b) why the admissibility of the newly discovered evidence may have resulted in a different judgment if the evidence had been admitted at the previous trial; (c) that the Petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (d) the relief sought. *Hart*, 911 S.W.2d at 374-75. Affidavits should be filed in support of the petition. *Id*. at 375.

Petitions for writ of error *coram nobis* are subject to a one-year statute of limitations. T.C.A. § 27-7-103. "The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed[] post-trial motion." *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010). "Timeliness under the statute of limitations . . . is not an affirmative defense; rather, it is one of the essential elements of a *coram nobis* claim." *Clardy v. State*, 691 S.W.3d 390, 401 (Tenn. 2024).

If a *coram nobis* petition "does not show on its face that it is filed within the one-year statute of limitations, the petition must set forth with particularity facts demonstrating that the prisoner is entitled to equitable tolling of the statute of limitations." *Nunley v. State*, 552 S.W.3d 800, 829 (Tenn. 2018). "[T]he *coram nobis* statute of limitations may be tolled only if the petitioner produces newly discovered evidence that would, if true, establish clearly and convincingly that the petitioner is actually innocent of the underlying crime of which he was convicted." *Clardy*, 691 S.W.3d at 407.

In case number C-24-132, the Petitioner attached to his untimely petition an affidavit from Mr. Poston, which stated that Mr. Poston had lied at trial. The *coram nobis* court found that the affidavit did not allege evidence of the Petitioner's actual innocence. Similarly, in case number C-24-151, the Petitioner presented an affidavit from Reginald Hurd, in which Mr. Hurd stated that he had lied to the police. He also stated that he had

been with the Petitioner on the night of the crime. The *coram nobis* court found that this also was not evidence of "actual innocence" and thus, neither petition was subject to a tolling of its statute of limitations. We affirm the *coram nobis* court's judgments.

## III. Conclusion

In accordance with the foregoing reasoning and authorities, we conclude that the *coram nobis* court did not err when it denied the Petitioner's petition for writ of error *coram nobis* in case number C-24-132. In case number C-24-151, the coram nobis court did not rule on the Petitioner's motion to recuse, and accordingly, we remand the case to the *coram nobis* court for a ruling on the Petitioner's motion.

.

_____-S/ *ROBERT W. WEDEMEYER*__
ROBERT W. WEDEMEYER, JUDGE